Ms. Oswald for the appellant, Mr. Hansberg for the appellate. Good morning, Ms. Oswald. We're ready when you are. Good morning. May it please the Court, I would like to reserve a moment for rebuttal. Trustee Alford's mere presence in the Capitol on January 6th is not sufficient to convict him of disorderly or disruptive conduct under Title 18 or under Title 40. But even if the Court disagrees and finds that his conduct is sufficient to violate those statutes, it was not enough to justify the 12-month, day-for-day sentence that was imposed in this case. Starting with the statutes. Counsel, excuse me. This is Judge Rogers. I'm sorry. I mentioned this to the court clerk. The audio is not very strong. So could you speak loudly? Yes, Your Honor, I apologize. Excellent. Thank you so much. Starting with the text of the statutes, each contains an element requiring the government to prove that Mr. Alford engaged in a disorderly or disruptive act. Reading the conduct element to require conduct that is boisterous or unruly gives meaning to all of those terms. Congress could have drafted a statute that criminalizes any conduct, but it did not do so in this case. Counsel, it strikes me that the difference between you and your friends on the other side is whether the terms disruptive or disorderly should be inherently so, or whether it's the effects of the conduct that is disruptive or disorderly. And so I wanted to ask you, what in your view is inherently disruptive or disorderly? Because it seems that that's very context-dependent. For example, screaming in a courtroom would be disruptive, but screaming at a ballgame would not. So what is inherently disruptive in your view? I understand, Your Honor. I think, first, the text, especially in Title 18, gives us a clue that Congress intended the effect to be judged separately. And that might be where context comes in to decide where something is disorderly or disruptive. Screaming at a ballgame, for example, that conduct on its own, it might qualify as disorderly or disruptive if it's loud or abusive screaming towards the other team. However, in context, it might not have the effect. But how is that disruptive if everybody else is screaming, too, and people are expected to scream at ballgames? So is it inherently disruptive in that context? It is, because it is conduct that you would expect would be disruptive or that tends to be disruptive. But in the context of a ballgame, it's just not having the same effect that it would somewhere else. But is it disruptive? It's cheering on the team. It's promoting the purpose of that proceeding. Well, cheering might be, but also at a ballgame, you might have people that are jeering the other team or trying to distract them from what's happening on the field. So you don't think cheering is inherently disruptive? If it's loud cheering, it might be inherently disruptive. You said might be, meaning it's context dependent and not inherently so, right? No, I just simply mean that a jury could look at someone who was cheering and decide that that conduct is inherently disruptive. However, I don't think the court needs to draw the line. But how would it decide that? How would the jury decide if that's inherently disruptive or not? I think just using their common sense, they can make that determination. Based on the context? No, Your Honor, not based on the context, based on the behavior itself. But I don't think the court, I respect that our interpretation of the statute might lead to some difficult line drawing problems about what is or is not disruptive. But I don't think that the court needs to create a hard and fast rule in this case. It need only decide that mere presence in the capital is not enough. Because that was the theory that the government presented to the jury in this case. And that was the theory on which the jury convicted. But mere presence, it depends on the context, again. If you were president of the capital for a tour, that's one thing. But if you're president in the context of a mob that's trying to overturn a presidential election, it's a whole different thing. I don't think you can divorce the conduct from the context. I understand your point, Your Honor. And I would point, Your Honor, to the case Garner v. Louisiana, which is actually a case that the government cited first in their brief. And in that case, the facts of that case involved black students who entered a department store to sit at a lunch counter that was reserved for white customers. It was a case from the 1960s. And they created a disruption. And they were asked by police to leave. And they refused to leave. And they were eventually prosecuted under Louisiana's version of disorderly and disruptive conduct. And their case eventually reached the Supreme Court. And the court, in its plurality decision, said, you do not have to reach the constitutionality of the statute because sitting at a lunch counter is not disorderly or disruptive conduct. Even if it has disruptive effect, even if it was intended to be disruptive, that conduct on its own terms is not disorderly or disruptive. So I think looking at constitutional issues is different from the statutory interpretation issue that's before the court. And it appears that when Congress passed these statutes, they wanted to address conduct that was disruptive of the proceedings. I don't disagree with that, Your Honor. So that's the effect of the conduct. Yes, and I believe the statute as a whole does address the effect of the conduct. Because especially in Title 18, one of the elements is the effect of the conduct is disruptive. So that seems to me, though, what the government's position is, that we should define disruptive based on the effects that the conduct has. For example, if your client was merely present but walked onto the floor of the Senate during the vote certification and just was present there, would that be disruptive in your view? No, Your Honor. No? No. So he's allowed to do that and there'd be no criminal penalty under these statutes for doing that? Well, there would be under subsection A1 of Title 18 because he's in a place that he's not authorized to be. And Mr. Alford was also— During the vote certification, causing them to stop the certification? It might have disruptive effect, but that is a separate element from disruptive conduct. And so our position is that because especially in Title 18 where Congress has set out a separate element of the offense, it would be inappropriate to read out the conduct element from the statute. Because that statute sets forth—essentially, it sets out a location element and then it sets out three additional elements. The first is disruptive intent, the second is disruptive conduct, and the third is disruptive effect. And so the court should give meaning to all three of those elements separately. So it seems to me, though, you're saying 1752, you would conflate two elements if you interpret disruptive to mean effect because then it has to in fact impede the proceeding? Correct. Something can have a disruptive effect but not succeed. It could end up not impeding the proceeding. So I don't—how does that fit with your theory? But you could hold up a sign, for example, in the middle of a court hearing or in the middle of a congressional hearing, and the hearing could just continue. They could ignore you. Would you be guilty under that statute? Well, our—potentially because the statute also covers attempts. So if you're doing it with intent to disrupt the proceeding and you attempt to do so— No, if there's no disruptive effect, then I don't— That's a different element. I'm just saying would that be disruptive? Put effect aside and put attempt aside. Is it disruptive to stand up with a sign that says whatever it says in the middle of a proceeding, but the proceeding continues, so it didn't succeed? Oh, understood.  That seems to be a difficult position to take. That holding up a sign during a proceeding is not disruptive? Yes. And I—well, Your Honor, we go back to the language of the statute, which has disruptive or disorderly conduct. But you can reconcile it with the language if you adopt the interpretation of the government. It would be odd to interpret a criminal statute to essentially remove an element of the offense. I understand that redundancy appears sometimes in statutes, particularly when you have a series of synonyms or near synonyms, and it appears that Congress is trying to cover all its bases. But when you have a statute that sets out three separate elements, the best understanding of what Congress was trying to do was to require the court— excuse me, require the government to prove three separate elements. And I see that I've gone over my time, and so if the court has other questions, I'm happy to answer them. I'm sorry. I've taken up all your time. I should ask my colleagues. Does any—do either of you have any questions? I don't have any questions. Thank you. No, thank you. All right. Thank you. Thank you. We'll give you time for rebuttal. Good morning. May it please the court, Eric Hansford of the United States. On January 6th, the defendant engaged in disorderly or disruptive conduct by entering the breached Capitol Building through a broken open door, undergoing no security screening, and joining the mob that was occupying the building and preventing the electoral circuit from going forward. That conduct fits the plain established meaning of disorderly or disruptive conduct, and in addition, the defendant's sentence, which was in the lower half of the undisputed sentencing guideline, that's undisputed here, was substantive. So starting with the disorderly or disruptive conduct issue, as we—I think we collect a lot of citations for this on 31 to 32 of our brief and footnote three, these terms are inherently context-dependent. It makes little sense to think of whether conduct is disorderly or disruptive without considering context, and the plain language the case law supports does interpret it that way. So disruptive has, in the Supreme Court case, ingrained, and other cases the courts in Braunstein have said, this is a context-dependent, circumstance-dependent inquiry. And then disorderly conduct, which is an old offense and relates back to the common law offense, that likewise depends on context. Let me ask you this, counsel. If we decide that the conduct here is sufficient to prove disruptive, do we have to reach the issue of disorderly? No, we do not. And is there a preference for whether we reach both issues or just one? I don't think it matters to the government as to whether—yeah. I don't think we would need, like, double liability for these circumstances. So no, I don't think there's a preference in terms of that. And I do think disruptive probably is the more straightforward path here. But I think, as you've heard this morning, it is hard to understand what it would mean to be inherently and categorically disruptive or disorderly. There's lots of context—conduct you can think of that is going to be appropriate in certain circumstances. This court in Braunstein said a security officer firing a gun during a Supreme Court proceeding isn't disruptive. It's meant to protect the court. And so, likewise, shouting is not going to be disruptive if you're at a speech that the president is giving and you're cheering the president on. On the other hand, if you are shouting and preventing congressional hearing or the president's speech from going forward, that is disruptive. So it is going to be very, very contentious. 1752, I think it's notable, is about secret service-restricted areas. So it's not focused specifically on the Capitol the way 5104 is. For example, if you have someone who holds up a boombox blaring sound in the middle of an Iowa cornfield, if the president is giving a speech there, that's disruptive. But in the vast majority of circumstances, that's not going to be disruptive. So in all of your arguments, is not the assumption that there is a passage of time such that a person, a potential defendant, has an opportunity to withdraw so that it is not a situation where someone is caught up but not supporting whatever is going on? I think it's accurate that a person is not... If this is going to the mere presence idea, I think it's accurate that if you are in a place in which you are otherwise lawfully allowed to be, somehow a mob comes to you. The fact that you happen to be present in that place and the mob has come to you is not going to mean that you are part of the mob and therefore disorderly or disruptive. But as in this case, the January 6th cases, when you are entering what's supposed to be a secured building and you are forgoing the security screenings that you obviously know should be there. Mr. Alfred, in this case, said he entered through a broken... Well, counsel, what I'm trying to define is your use and reliance on the word obvious. Because some of the appellant's argument, it seems to me, it's the notion that one is there for innocent reasons and gets caught up in a situation which that individual is not supporting. And I just wanted to clarify, it seems to me that the record here, and we haven't talked about it so far this morning, makes clear that people were on notice and had the opportunity to withdraw or never to enter in the first place because of all the signs and the warnings, both the oral warnings that were given at the time prior to the actual breaking and entering. So that's right, Your Honor. And there was kind of a jury argument as to whether or not he was on notice, but he's not pressing that. The jury clearly found he was on notice. But I think intentionally, or importantly, in terms of your question about accidentally being caught up in this, the statutes, both statutes, have a requirement that there be an intent to disrupt. And so this is not a case where you could kind of accidentally... I know. I'm just trying to focus on how the government might meet its burden of proof. Sure. Statute says there has to be intent. So how do you show intent, for example? So I think in this case, and in many of these cases, there's lots of kind of prior posts that the defendant has done on social media, indicating that, in fact, the intent is to join efforts to disrupt the election. And I do want to note that I think there was the question about the time at which you're acting. There is a difference between disorderly or disruptive conduct and the effect of a disruption, which is that the disorderly or disruptive conduct is a prospective inquiry. The question is whether it tends to disrupt or tends to breach the peace. So that's classic black law dictionary of what is disorderly conduct. Lots of peace law to support that. And by contrast, the effect of the result element is retrospectively did, in fact, disruption or interruption resolve. So hypothetically, suppose this particular defendant said a lot of things before he got to the Capitol, both before the 6th, as well as in other contexts. But what I'm trying to focus on is. And you I'm surprised you haven't grabbed on to this, or maybe I misunderstand what you're trying to emphasize. This is not a situation where the defendant is being prosecuted because of what he said on January 3rd or January 4th. And it's not because of. Innocent presence, if I can put it that way, because the argument here is mere presence and that normally assumes innocent presence. That's right. That's exactly right, Your Honor. He's not being prosecuted for what he said beforehand. He's being prosecuted for his actions on January 6th. And and I agree that mere presence is probably not really the correct term. So what's the evidence that supports the sufficiency in this case? So the evidence is that he entered through a. So he as to the intent, we've got all these social media posts that we go through in the brief that he is planning to be aware of what's happening with the electoral certification. Wanting to disrupt. And then on January 6th itself, he enters through what he admits is a broken open building. He foregoes security screenings and walks through a magnetic metal detector, sets off the alarm as he's walking through it. Obviously, he's not going through that security screening and joins the mob that is occupying Congress. And there's testimony in this case that a single unsecured person in the Capitol building forces the Capitol police officers there under Capitol protocols to stop the proceedings from going forward, to stop the hearings because it's a it's a safety risk, understandably, to the members of Congress who is there. So that that joining of the mob that's occupying the Capitol building is certainly within the plane and establishment of disorderly or disruptive conduct. This report in Washington Mobilization Committee discussed how blocking city streets is is a form of disorderly or disruptive conduct that would certainly fit. So is your position that no one who was in the Capitol that day was there innocently? We're not taking a categorical position along those lines. I mean, I think it's. So we're not taking a categorical position. Well, who would be there innocently in your mind? I think it is hard to come up with people actually who were there innocently. But you could have hypotheticals. The security officer works in a nearby building, not associated with the Capitol. He sees the police are overrun, runs in to try to help out the police, something along those lines. So you could certainly have circumstances along those lines where people would be there innocently. And I think usually the innocence is going to the innocent person is going to come down to the intent. And I think the intent element, the intent to disrupt or the intent to is going to be doing a lot of work in trying to distinguish people who are guilty and people who are there accidentally. Well, I mean, you might say, in addition, I'm sorry, Judge Henderson. Well, I was going to say, and you may not know the answer to this. So is it your intent to prosecute everyone who was in that building that day? Every layperson, not law enforcement officers from somewhere else? Because no one was there innocently. I don't know the answer. Right. I didn't think so. OK. There are no further questions from the court. We ask this court to affirm. Thank you. We'll give you two minutes of rebuttal time. Thank you, Your Honor. I did want to make one clarification regarding the Garner case. That was not a case of a constitutional question. It was initially brought in that way, but the Supreme Court resolved it on sufficiency of the evidence grounds and said that sitting at a lunch counter, even if you're doing it in a way that has a disruptive effect, even if you intend that disruptive effect, is not disorderly conduct under the Louisiana statute. It wasn't a statute about impeding a lunch counter. Whereas we're looking at a statute here that's about impeding a congressional proceeding. Again, context dependent, correct? It was a disorderly conduct statute under Louisiana law that, in fact, in that statute was broader than this one because it prohibited any conduct that had a tendency to disrupt. And so it was very similar to this case. A lot of other cases at the government sites have a conduct element and an effect element. For example, the Braunstein case that my friend just mentioned. If I can go back to your Garner example, it seems to me that sitting at a lunch counter is not disruptive. What was disruptive is the reaction to them sitting at the counter. Isn't that different from what we have here? Just sitting in a public accommodation at a lunch counter is not disruptive. It's not like going into the floor of Congress during a vote certification. In the lunch counter situation, it's the reaction to it that became unruly and disruptive. Your Honor, there's no principled way to distinguish the two. The breadth of the way the government reads the statute covers any kind of nonviolent direct action that's intended to be disruptive and garner attention. It doesn't, not in a baseball stadium, for example. It's context dependent. I'm talking about nonviolent direct action where a group of people, for example, go sit at a lunch counter where they've been told they're not supposed to be. There's a hypothetical in the government's brief. Somebody goes to a wedding and goes and stands between the bride and the groom when they're supposed to kiss, peacefully. You don't think that's disruptive? It's not disruptive conduct. It might have the effect of being disruptive, but it's not disruptive conduct. I see that my time is up, so if there's no further questions, we ask the Court to reverse. Thank you. Thank you. Case is submitted. Thank you very much.
judges: Henderson, Pan, Rogers